UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JACOB ROBERT CARATHERS, ) | |
| *Plaintiff*, ) | |
| ) | Case No: 2:23-cv-00032 |
| v. ) | |
| ) | Judge Christopher H. Steger |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Jacob Robert Carathers seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial of benefits by the Commissioner of the Social Security Administration ("Commissioner") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f. [*See* Doc. 1]. The parties consented to entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 17].

Each party has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Docs. 15, 16,[1] 22]. For reasons that follow, Plaintiff's request for relief [Docs. 15, 16] will be **GRANTED IN PART**, the Commissioner's request for relief [Doc. 22] will be **DENIED**, and the Commissioner's decision will be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g).

---

[1] Plaintiff's filings are styled as Plaintiff's Motion for Summary Judgment [Doc. 15] and Plaintiff's Brief in Support of Motion for Summary Judgment [Doc. 16], consistent with the practice prior to the effective date of the new Supplemental Rules.

## II. Procedural History

On April 30, 2019, Plaintiff applied for benefits under the Act. [Doc. 16 at 1]. Plaintiff alleges disability as of April 30, 2017. (Tr. 15). Plaintiff's claims were denied initially, but the Appeals Council remanded the case. [Doc. 16 at 1-2]. At a telephonic hearing (due to the COVID-19 pandemic) on October 25, 2021, in which Plaintiff and his attorney both participated, Administrative Law Judge Sherman D. Schwartzberg ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 15, 30, 713-25). The ALJ then rendered his decision, finding that Plaintiff was disabled but would not be disabled if he stopped his substance abuse. (Tr. 29). Therefore, the ALJ found Plaintiff not to be disabled within the meaning of the Act. *Id.*

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; however, that request was denied. (Tr. 1). Exhausting his administrative remedies, Plaintiff filed his Complaint [Doc. 1] on March 29, 2023, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing briefs and this matter is ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant has not engaged in substantial gainful activity since April 30, 2017, the alleged onset date. (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*)

2. The claimant has had the following severe impairments: bipolar disorder; posttraumatic stress disorder (PTSD); personality disorder; generalized anxiety disorder (GAD) with history of panic disorder; gastrointestinal disorders with low body mass index (BMI); and alcohol use disorder (20 C.F.R. §§ 404.1520(c), 416.920(c)).

3. Including the claimant's substance use, the severity of the claimant's impairment(s) met the criteria of section(s) 5.08 of 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925).

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments (20 C.F.R. §§ 404.1522, 416.922).

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(f), 416.994(b)(5)(i)).

6. After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance use, the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except with occasional postural, no climbing of ladders, ropes, or scaffolds, avoid concentrated exposure to hazards and vibrations, simple, routine, repetitive work, occasional contact with coworkers and supervisors, and no public contact, limited to reasoning 1, 2 & 3 jobs.

7. The claimant is still unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

8. The claimant has at least a high school education (20 C.F.R. §§ 404.1564, 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41, 20 C.F.R. Pt. 404, Subpt. P, App. 2).

10. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966).

11. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g), 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. at 18-29).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, he is not disabled; (2) if a claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United*

*States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.     Analysis

Among other things, Plaintiff takes issue with the ALJ's support for his conclusion that Listing 5.08 was only met when including Plaintiff's substance use. [Doc. 16 at 11-13].

Listing 5.08 defines a specific disability as:

*Weight loss due to any digestive disorder, despite adherence to prescribed medical treatment, with BMI[2] of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 12-month period.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08.

In supporting his conclusion that Listing 5.08 was only met when including Plaintiff's substance use, the ALJ stated, "Treatment notes reveal that during periods of reported medication compliance and limited substance abuse, the claimant's BMI rose above 17.5, enjoying sustained elevation between September 2019 and March 2020, as the claimant sought treatment for mental and physical impairments, and reported compliance with appropriate medications." (Tr. 21). Plaintiff specifically alleges two primary issues: (1) health records from that time contradict limited substance abuse and medication compliance; and (2) the BMI numbers for that time are inaccurate and falsely show sustained elevation. [Doc. 16 at 12-13]. The Court will address these in reverse order.

    A.     Falsely Inflated BMI

Plaintiff points to inconsistencies between various medical records that show Plaintiff's height is listed as 5'8" on the low end and 6' on the high end. The Court has summarized all the

---

[2] BMI stands for body mass index and is simply a person's weight to height ratio. It is calculated by dividing weight in kilograms by the square of height in meters (BMI=kg/(m$^2$)). *Body Mass Index (BMI)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/articles/9464-body-mass-index-bm.

medical visits in the record that have height and weight measurements[3] in the table below:

| Appt. Date | Medical Provider | Recorded Height | Recorded Weight | Recorded BMI | 5'10" BMI[4] | Citation |
|---|---|---|---|---|---|---|
| 5/25/17 | Rural Health | 6' | 118.5 | 16.07 | 17.0 | Tr. 525 |
| 9/11/18 | Rural Health | 6' | 116.0 | 15.73 | 16.6 | Tr. 519 |
| 9/25/18 | Rural Health | 6' | 120.4 | 16.33 | 17.3 | Tr. 514 |
| 3/13/19 | Rural Health | 6' | 118.1 | 16.02 | 16.9 | Tr. 508 |
| 4/16/19 | Gastro. Assoc. | 5'11" | 120.1[5] | 16.75 | 17.2 | Tr. 537 |
| 5/10/19 | Gastro. Assoc. | 5'11" | 115.0 | 16.04 | 16.5 | Tr. 705 |
| 9/12/19 | Frontier Health | 5'8" | 117.0 | 17.79 | 16.8 | Tr. 543 |
| 10/31/19 | Frontier Health | 5'8" | 120.0 | 18.24 | 17.2 | Tr. 573 |
| 12/12/19 | Frontier Health | 5'8" | 117.0 | 17.79 | 16.8 | Tr. 635 |
| 1/23/20 | Frontier Health | 5'8" | 120.0 | 18.24 | 17.2 | Tr. 641 |
| 3/12/20 | Frontier Health | 5'8" | 114.0 | 17.33 | 16.4 | Tr. 684 |
| 6/2/20 | Rural Health | 5'10" | 113.0 | 16.21 | 16.2 | Tr. 582 |
| 4/28/20 | Rural Health | 5'10" | 116.0 | 16.64 | 16.6 | Tr. 690 |

The period of time cited by the ALJ for sustained BMI elevation above 17.5 exactly correlates to all the calculations that were done with Plaintiff's height at 5'8". Clearly, a lower number in the denominator of a ratio will result in elevated values. The other two health providers, Rural Health Services Consortium and Gastrointestinal Associates of Northeast Tennessee measured Plaintiff at either 5'10", 5'11", or 6', depending on the appointment. As can be seen in the table above, even if the lowest of these numbers (5'10") is used to calculate Plaintiff's BMI, the result is *never* above 17.5. Further, a gap of four inches in a height measurement is an extreme range for error allowance. No rocket science or impossibly precise calibrations are required to get an accurate height measurement. While some error of measurement is allowable, in this context four inches is far too great.

---

[3] The Court has not included the data from a September 17, 2019 psychological evaluation by Steven Lawhon, Psy.D., in the table because the height and weight found there appear to be based on Plaintiff's reported height and weight, not on measurements.
[4] The Court utilized the BMI Calculator from the National Institutes of Health found at https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.
[5] The actual recorded weight was 120 lbs. 2 oz. This converts to 120.13 lbs. which has been rounded to 120.1 for the sake of consistency in the table.

Because Plaintiff's height is unclear, the Court finds it more useful to compare Plaintiff's weight—for surely, whatever Plaintiff's height, it was the same from 2017 through 2020. Therefore, as BMI is a ratio of weight to height, the ALJ's claim of an elevated BMI is really just a claim of elevated weight.

Using the weight measurements from the five visits in the table that occurred in the seven months from September 2019 to March 2020, Plaintiff's average weight during that time was 117.6 pounds. Using the measurements from the five visits in the table that occurred in the 12 months immediately prior to September 2019, Plaintiff's average weight was 117.7 pounds. This clearly contradicts a claim of sustained elevation in weight—and, by extension, BMI.

Further, the table shows that the majority of Plaintiff's weight measurements are within two to three pounds of his average weight over a three-year period. "[T]he average fluctuation is a window of about 5 to 6 pounds per day (2 to 3 lbs. in either direction)" and is influenced by a wide variety of factors. *7 Possible Reasons Why Your Weight Fluctuates*, CLEVELAND CLINIC, July 26, 2024, https://health.clevelandclinic.org/weight-fluctuations. The Court is concerned with the validity of conclusions to be drawn from relatively small fluctuations in weight.

The Court finds that a reasonable mind cannot accept the BMI evidence in the record as adequate to support the ALJ's claim regarding a period of sustained BMI elevation above 17.5. Therefore, the ALJ's decision on this issue is not supported by substantial evidence.

Additionally, the ALJ has a duty to develop the record. *See* 20 C.F.R. § 404.1545(a)(3) ("[W]e are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary . . . ."). Such a duty is particularly important where there is a clear and material discrepancy in the record. "Even if supported by substantial evidence, [] a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations

and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

The Court also finds that the ALJ did not develop the record in accordance with the regulations on a fundamentally important issue in this case that was clearly muddled. Further developing the record was required here, where the particular regulation involved in the disability determination contained a precise measurement standard, and the inconsistent measurement in question determined whether the calculated value was above or below that standard—i.e., where the error prejudiced Plaintiff on the merits.

B.  **Records Contradict the ALJ's Assertions**

Plaintiff also claims that health records significantly undermine the ALJ's claims regarding September 2019 to March 2020. [Doc. 16 at 12-13].

First, the ALJ claimed that treatment notes showed "medication compliance" during the relevant period. (Tr. 21). Treatment notes during the relevant period could possibly support some medication compliance. In September 2019, Plaintiff reported Seroquel was giving him severe restless leg syndrome. (Tr. 543). In March 2020, Plaintiff reported that his mood was unaffected by Geodon, Risperidone, or Seroquel. (Tr. 684).

However, treatment notes during the relevant period also showed significant noncompliance with medication. In September 2019, Plaintiff was prescribed Remeron and Lexapro. (Tr. 549). At his next appointment in October 2019, Plaintiff said he stopped taking both "because neither of them work." (Tr. 573). So, Plaintiff was prescribed Trazodone. (Tr. 577). At his next appointment in December 2019, Plaintiff said he stopped taking it "because he experienced priapism after taking it two nights in a row." (Tr. 635). So, Plaintiff was prescribed Risperdal. (Tr. 639). At his next appointment in January 2020, Plaintiff said he didn't "like that feeling so I quit

taking that medicine . . . plus, I drink like a half a fifth of liquor and it makes me happy and I don't want nothing harshing buzz." (Tr. 641). Plaintiff was noted as resistant to taking medications because "I want something that makes me feel good . . . if I don't feel good I ain't gonna take it." *Id.* Additionally, at his next appointment in March 2020 where Plaintiff reported his mood was unaffected by Geodon, Risperidone, or Seroquel, the medical provider expressed doubt that Plaintiff "was actually taking any of the medications." (Tr. 687).

Second, the ALJ claimed that September 2019 to March 2020 showed a period of "limited substance abuse." (Tr. 21). Mild support for this conclusion is found in two records from that period. While the record from Plaintiff's September 2019 visit with Frontier Health reports Plaintiff was "currently drinking 8-10 shots a day" (Tr. 546), this appears to be left in the medical record from his July 2019 appointment. (*See* Tr. 555). No other alcohol use clearly emanating from the September 2019 visit appears in the treatment notes. (*See* Tr. 543-50). Further, in October 2019, Plaintiff denied use of alcohol. (Tr. 573)

However, an abundance of evidence from the relevant period contradicts the idea of limited substance abuse. The September 2019 psychological evaluation from Dr. Lawhon states that Plaintiff "does currently abuse alcohol, and stated that he drinks a half bottle of liquor, several days a week. He also said he drinks to sleep." (Tr. 570). In December 2019, Plaintiff reported "drinking 8-10 shots of liquor a night and it barely affects me." (Tr. 635). When the medical provider brought up rehab, Plaintiff responded, "[N]o way . . . I'm not going to quit drinking I just want to get some sleep." *Id.* He also reported eating *very* little food because "if I don't eat the shots work better." (Tr. 636). In January 2020, as noted above, Plaintiff stopped taking his medication in part because "I drink about half a fifth of liquor and it makes me happy and I don't want nothing harshing buzz." (Tr. 641). He also reported only eating "a little bit . . . I mostly wanna drink and

don't want nothing to mess with the buzz." *Id.* Finally, in March 2020, Plaintiff reported "drinking 6-8 shots of liquor a day" (Tr. 684) and was diagnosed with alcohol use disorder. (Tr. 687).

Taken as a whole, a reasonable mind would not conclude that the medical records reflect a period of medication compliance and limited substance abuse from September 2019 to March 2020. Therefore, the ALJ's conclusion in this regard is not supported by substantial evidence.

C. **Remand**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, there is insufficient support for the ALJ's findings, and the factual issues have not been resolved. At the very least, ordering a consultative examination to accurately settle the open

question of Plaintiff's height is highly recommended. This matter shall therefore be remanded for rehearing under Sentence Four.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's request for relief [Docs. 15, 16] will be **GRANTED IN PART**, the Commissioner's request for relief [Doc. 22] will be **DENIED**, and the decision of the ALJ is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE